UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JMC CONSTRUCTION LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-01925-B |
| | § | |
| MODULAR SPACE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Plaintiff JMC Construction L.P.'s Motion for Final Summary Judgment (doc. 29) and Defendant's Cross-Motion for Summary Judgment (doc. 33). After review of the motions and briefing, Plaintiff's Motion for Final Summary Judgment (doc. 29) is **GRANTED in part and DENIED in part**. Defendant's Cross-Motion for Summary Judgment (doc. 33) is **DENIED**.

### I. FACTUAL BACKGROUND

The dispute revolves around alleged damages to modular buildings which were the subject of a Purchase and Sale Agreement between the parties. JMC Construction, LP ("JMC") manufactures, purchases, and assembles modular buildings. It also provides modular buildings to be leased, often to the United States Government to be used as army barracks. In 2000, JMC entered into a lease contract with the United States Government for three modular buildings to be used as barracks ("Phase I Lease"). In 2001, JMC entered into another lease with the Government for three additional modular buildings ("Phase II Lease"). After the execution of the Leases, JMC entered into a Purchase and Sale Agreement ("the Contract") with Stratton Securities, Inc. ("Stratton"). Pursuant to that Contract, JMC assigned to Stratton all of JMC's rights, including the right to collect

lease payments, but none of its obligations under the Leases. JMC also sold to Stratton the Phase I and Phase II modular buildings themselves. Stratton subsequently assigned the Contract to Resun Leasing, Inc. ("Resun"), which is now known as Modular Space Corporation ("ModSpace").

When the Phase I Lease ended in 2005, Resun did not disassemble and transport the buildings to a storage yard and did not contact JMC to do so. In February 2006, JMC dismantled and transported the Phase I buildings to a storage yard. When the Phase II Lease ended, Resun contacted JMC and authorized it to dismantle and transport the buildings to the same storage yard, which it did. The dispute arises over the origin and nature of alleged damages to these buildings. JMC asserts the buildings were in excellent condition with no damage, other than negligible wear and tear, when they were placed in the storage yard by JMC. On the other hand, ModSpace alleges JMC damaged the buildings in the dismantle and transport process and that, in accordance with the Contract, JMC is liable to them for those damages.

The Contract between JMC and Stratton, to which ModSpace is a successor in interest, contained the following provisions:

> **4.2 Return, Removal and Remarketing.** At the expiration or sooner termination of the Lease, unless otherwise provided for in the Lease, Purchaser [Stratton] shall have the option to dismantle and transport the Property. If Purchaser elects to dismantle and transport the Property, Purchaser shall be entitled to the compensation, if any, set forth in the Lease for these services. If the Purchaser elects to have the Seller [JMC] dismantle and transport the Property, then Seller shall dismantle the Property and transport the Property to the storage location that is directed by the Purchaser. Seller will be compensated for dismantle and delivery at the amount specified in the Lease for these services, but in no event, less than the amount of the actual costs associated with the dismantle and transportation of the Property. Seller shall have no obligation to dismantle, move or transport the Property if the Lease is extended beyond the original term (including all options if government or municipal lease) or if the Property is purchased by the User.

The next paragraph of the Contract begins, "If Seller dismantles the Property at the election of Purchaser, Seller shall perform such services in accordance with the scope of work . . ." and contains provisions for providing notice prior to the commencement of the dismantling and transport work. Toward the end of this paragraph appears this sentence, "Seller shall bear all risk of loss during the dismantle and transport of the Property."

The Contract also contains a provision under "Indemnification" that provides:

> **6.2 Indemnification by Purchaser.** Purchaser agrees to indemnify Seller and to protect, defend and hold it harmless, from and against any and all loss, cost, damage, injury or expense, including, without limitation, reasonable attorneys' fees, and other legal expenses wheresoever and howsoever arising which seller may incur for, or by reason of (I) the untruthfulness of any of the warranties or representations of Purchaser contained in any of the Transaction Documents or (ii) a breach by Purchaser of any of the warranties or agreements of Purchaser contained in any of the Transaction documents.

The Contract contains a similar paragraph providing indemnification by the Seller (JMC) to the Purchaser (Stratton), and its successors and assigns, for "any and all loss, cost, damage, injury or expense, including, without limitation, reasonable attorneys' fees and other legal expenses, which Purchaser may incur for or by reason of . . . a breach by Seller of any of the warranties or agreements of Seller contained herein or in any of the other Transaction Documents." With regard to indemnification by Seller, the following clause, which is not included in the section on indemnification by Purchaser, appears next: "In no event shall the Seller be liable in any event for any indirect, incidental, special or consequential damages." Despite these mutual indemnification clauses, the Contract does not include a clause containing a blanket statement to the effect that the prevailing party in a dispute over the contract is entitled to recover its attorneys' fees. The Contract also provides that it "shall be governed by and interpreted under the laws of the State of South

Carolina applicable to contracts made and to be performed therein, without giving effect to the principles of conflict of laws thereof."

## II. PROCEDURAL BACKGROUND

In 2007, ModSpace began sending JMC invoices demanding reimbursement of the cost of repairs to the damaged buildings, for which it claims JMC is liable. ModSpace informed JMC that if the invoices were not paid, it would file suit to collect payment. JMC filed this declaratory judgment and breach of contract lawsuit against ModSpace on October 16, 2007 in the 116th District Court of Dallas County, Texas. JMC seeks a declaratory judgment that it has no liability to ModSpace for the alleged damages to the building and seeks damages for breach of contract based on ModSpace's actions in seeking to recover from JMC the cost of repairs to the buildings. The case was removed from state court on November 16, 2007. ModSpace filed a Counterclaim on April 8, 2008 asserting negligence and breach of contract claims against JMC. ModSpace argues JMC is required by the contracts to (1) "bear all risk of loss during the dismantle and transport of the property" and (2) "bear the costs of any excess wear and tear to the buildings that occurred while being leased by the Government." The Court granted JMC leave to file its First Amended Original Complaint, which was filed on April 15, 2008. JMC filed an Answer to Defendant's Counterclaim on April 18, 2008. ModSpace did not file an Answer to Plaintiff's First Amended Original Complaint.

JMC filed its Motion for Final Summary Judgment (doc. 29) on July 30, 2008 supported by the affidavit of its designated expert, Ben Bell. ModSpace filed its response to JMC's Motion for

Summary Judgment and Cross-Motion for Partial Summary Judgment (doc. 34) on August 21, 2008.[1] In support of its Response, ModSpace provided declarations of Paul Sly and Dan Sharer. On August 28, 2008, JMC filed its Motion to Strike ModSpace's Response and the Supporting Declarations of Paul Sly and Dan Sharer (doc. 37).

On September 5, 2008, JMC filed its Reply to ModSpace's Response to JMC's Motion for Final Summary Judgment (doc. 39). In this reply, JMC urges the Court to wholly disregard the declarations of Paul Sly and Dan Sharer based on the grounds set forth in its Motion to Strike. JMC asks the Court to grant summary judgment in its favor based on ModSpace's failure to produce any "competent evidence to refute the affidavit testimony" of JMC's expert. On October 27, 2008, the Court signed an Order granting in part, and denying in part, JMC's Motion to Strike ModSpace's Response and the Supporting Declarations of Paul Sly and Dan Sharer (doc. 37). The Court ordered that the Appendix in Support of Defendant's Response to Plaintiff's Motion for Summary Judgment (doc. 35), including the declarations of Paul Sly and Dan Sharer and the exhibits attached to those declarations, be stricken in its entirety.

### III. SUMMARY JUDGMENT

In its Motion for Final Summary Judgment, JMC moves for summary judgment on its affirmative claims for a declaratory judgment and for breach of contract against ModSpace. Additionally, JMC moves for judgment in its favor on ModSpace's counterclaims for breach of

---

[1] The Court notes that on August 12, 2008, ModSpace filed an Unopposed Motion for Extension of Time to File Response/Reply to Motion for Summary Judgment (doc. 32) which was not ruled on by the Court prior to the filing of ModSpace's Response to JMC's Motion for Final Summary Judgment on August 21, 2008. The Court considers this Motion to be moot since the Response was received and filed by the Clerk of the Court. In the interest of justice, the Court has considered ModSpace's Response in making its decision. However, due to the Appendix in Support of ModSpace's Response being stricken by this Court in its October 28, 2008 Order, the Appendix, including all materials therein, is not considered by the Court in making its decision here.

contract and negligence. JMC offers a list of facts which it asserts are undisputed and supports its Motion with an expert affidavit regarding the condition of the modular buildings. ModSpace's Cross-Motion for Summary Judgment urges summary judgment in its favor on JMC's request for an award of attorneys' fees, which ModSpace claims fails as a matter of law.

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990) Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment

is not appropriate. *Little*, 37 F.3d at 1075. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting Fed R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*, 945 F.Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### B. ModSpace's Negligence and Breach of Contract Counterclaims

ModSpace, as the Counter-Plaintiff on its negligence and breach of contract counterclaims, has the burden of proof at trial on these claims. JMC moves for summary judgment in its favor on these claims by presenting the evidence of its expert and asserting ModSpace can present no controverting evidence. JMC argues there are no genuine issues of material fact for trial because ModSpace has no evidence to dispute the affidavit of JMC's properly designated expert, Ben Bell. Ben Bell states in his affidavit that the modular buildings were in excellent condition and were not damaged in the dismantling and transport process, other than ordinary wear and tear. He further states that JMC used reasonable care in the movement of the modular buildings. ModSpace responded to JMC's Motion for Final Summary Judgment and filed an appendix in support of its

response in an attempt to provide the Court evidence on its claims. However, that appendix has been stricken by this Court in its October 28, 2008 Order as a Rule 37 sanction based on ModSpace's conduct in discovery.[2]

Therefore, because ModSpace's proffered evidence has been stricken, the Court has no evidence before it to support ModSpace's position  The evidence provided by JMC indicates JMC did not cause any damages to the modular buildings and properly prepared them for transport. Furthermore, the Court cannot find a provision in the Contract in which JMC assumes liability for wear and tear, as asserted by ModSpace. JMC has not only provided evidence in its favor on these claims, it has pointed to the absence of evidence to support ModSpace's position. *See Latimer*, 919 F.2d at 303. ModSpace has put no evidence before this Court to create a genuine issue of material fact on its negligence and breach of contract claims. *See Matsushita*, 475 U.S. at 587; *Little*, 37 F.3d at 1075. Accordingly, the Court grants summary judgment in favor of JMC on ModSpace's negligence and breach of contract claims.

## C. JMC's Declaratory Judgment Claim

In its Motion for Final Summary Judgment, JMC asks the Court to grant summary judgment on its declaratory judgment claim for a "judicial declaration that it has incurred no liability to ModSpace in the movement of any of the subject modular buildings since the only supposed damage done to the buildings constituted ordinary wear and tear." In its First Amended Original Complaint, JMC "specifically request[ed] that the Court issue a declaratory judgment that JMC is not liable to

---

[2] The Court notes that the October 28, 2008 Order also excluded from trial all witnesses and documents not disclosed or produced to JMC during discovery. During discovery, ModSpace provided no Rule 26(a) initial disclosures and identified only Rodney Strasser as an individual with knowledge in its interrogatory responses. ModSpace produced no documents during discovery. Therefore, the only evidence ModSpace can bring forth at trial is the testimony of Rodney Strasser, and no documentary or photographic evidence, due ModSpace's dubious conduct during discovery.

ModSpace for any damage to the Phase I or Phase II barracks."

The Court has broad discretion in determining whether to entertain a declaratory judgment action. *Winton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted. *See Mandry v. Fina Oil & Chemical Co.*, No. 94-10509, 1994 WL 733494 at *2 (5th Cir. 1994) (reversing award of declaratory relief where "[t]he declaratory judgment does not declare any significant rights not already at issue in the contract dispute.").

ModSpace's breach of contract and negligence claims, which have been resolved by this Court in JMC's favor, overlap JMC's affirmative claim for declaratory judgment to the extent that there is no are no further issues left for trial on this claim. *See Mandry*, 1994 WL 733494 at *2. The Court has already found that JMC is not liable for breach of contract or negligence relating to the alleged damages to the Phase I and Phase II modular buildings. Granting a declaratory judgment in this case would be duplicative in light of the resolution of ModSpace's counterclaims. *See id.* Therefore, in light of this Court's disposition of ModSpace's breach of contract and negligence counterclaims in JMC's favor, the Court finds JMC's declaratory judgment claim is DENIED as MOOT.

### D. JMC's Breach of Contract Claim

In its Motion for Final Summary Judgment, JMC also argues that it is entitled to summary judgment on its affirmative claim of breach of contract. JMC's argument is that ModSpace "breached" the contract between the parties by sending JMC invoices for the damages ModSpace alleged were caused by JMC during dismantling and transport of the buildings, and "threatening litigation" on JMC's failure to pay the invoices. When the party with the burden of proof is the

movant, it must establish each element of its claim as a matter of law. *Fontenot*, 780 F.2d at 1194. Here, the burden is on JMC, as the plaintiff and the movant, to prove that it is entitled to summary judgment on this claim as a matter of law. *See Hart*, 343 F.3d at 764.

However, the Court cannot decipher from JMC's summary judgment motion what provision of the Contract it asserts ModSpace has breached. According to the Contract's indemnification provisions, Stratton, as Purchaser and as ModSpace's predecessor in interest, agreed to indemnify JMC against all expenses, including attorneys' fees, which JMC may incur for, or by reason of, a *breach by Purchaser of any of the . . . agreements of Purchaser contained in any of the Transaction Documents.*" (emphasis added). Thus, for JMC to be entitled to recover its attorneys' fees, the expense must have been incurred for or by reason of Modspace's breach of an agreement made in the Contract or transaction documents.

Yet the actions JMC argues "breached" the contract were ModSpace's assertion of its legal right to recover damages for which it claimed JMC was liable. ModSpace sent invoices and threatened a lawsuit regarding damages it claims JMC assumed in the risk of loss clause related to the dismantling and transport of the buildings. JMC has not clearly articulated to the Court how these actions have breached the contract. There is no *agreement* in the Contract that ModSpace would forego its right to claim any damages to which it asserts it is entitled under the Contract.

Moreover, the Court again notes that "[w]hen the plaintiff is the movant, it must establish each element of its claim as a matter of law." *Fontenot*, 780 F.2d at 1194. In this case, the Purchase and Sale Agreements of the parties provide that the law governing the Contract is that of the State of South Carolina. JMC has not clearly articulated the elements of a breach of contract claim under South Carolina law. Neither has it linked its evidence to those elements to clearly demonstrate to

the Court its proof on each element. Accordingly, the Court finds that JMC has not carried its burden to show that it is entitled to summary judgment on its breach of contract claim. JMC's motion for summary judgment on its breach of contract claim is DENIED.

### E. JMC's Request for Attorneys' Fees

In ModSpace's Cross-Claim for Summary Judgment, ModSpace argues JMC's request for attorneys' fees fails as a matter of law. ModSpace characterizes JMC's request for attorneys fees as being based on three grounds: (1) the indemnification provision in the contracts; (2) as a foreseeable damage resulting from ModSpace's breach of contract; and (3) based on the "Declaratory Judgment Act." In Response to ModSpace's Cross-Claim, JMC asserts that: (1) the indemnification provision in the contract is broad enough to encompass JMC's request for attorneys' fee; (2) attorneys' fees are recoverable as a foreseeable consequence of ModSpace's breach of contract; and (3) it has not seeking attorneys' fees under the "Declaratory Judgment Act."

JMC has not sought attorneys' fees related to its declaratory judgment claim and, therefore, JMC is not entitled to attorneys' fees on its declaratory judgment claim. As to the issue of recovery of attorneys' fees under the "Declaratory Judgment Act," ModSpace's cross-motion is DENIED as MOOT because no such request was made by JMC.

As to the two remaining grounds for recovering attorneys' fees, Fifth Circuit case law has "made it clear that in an ordinary diversity case, state rather than federal law governs the issue of the awarding of attorneys' fees." *Shelak v. White Motor Co.*, 636 F.2d 1069, 1072 (5th Cir. 1981) (citing numerous Fifth Circuit cases in support of this proposition). Accordingly, the district court's authority to award attorneys' fees "must be exercised within the bounds of applicable state law, and fee awards which contravene state law cannot be upheld on appeal." *Id.*

JMC's request for attorneys' fees relates to JMC's affirmative claim for breach of contract against ModSpace.  Again, the Court notes that in this case, the Purchase and Sale Agreements of the parties provide that the law governing the Contract is that of the State of South Carolina.  Yet ModSpace has cited only the law of the State of Texas in its Cross-Motion for Summary Judgment as to JMC's claims for attorneys' fees.  This does not assist the Court in determining whether JMC is entitled to attorneys' fees under the law South Carolina, which is the applicable law according to the terms of the Contract itself. *See id.*  Therefore, the Court finds that ModSpace has failed to carry its burden on the Cross-Motion. ModSpace's Cross-Motion for Summary Judgment regarding JMC's ability to recover attorneys' fees under the contract's indemnity provision and as a foreseeable damage to ModSpace's alleged breach of contract, is DENIED.

## IV.  CONCLUSION

The Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Final Summary Judgment(doc. 29).  The Court **GRANTS** summary judgment in favor of JMC on ModSpace's counterclaims for negligence and breach of contract. The Court **DENIES as MOOT** summary judgment on JMC's affirmative claim for declaratory judgment.  The Court **DENIES** summary judgment on JMC's affirmative claim for breach of contract. The Court **DENIES** Defendant's Cross-Motion for Summary Judgment (doc. 33).  The only issues remaining for trial are JMC's breach of contract claim and whether JMC is entitled to attorneys' fees.

Furthermore, the Court finds the Defendant's Unopposed Motion for Extension of Time to File Response/Reply to Motion for Summary Judgment (doc 32) is **MOOT**.

**SO ORDERED.**

**SIGNED October 30, 2008**

_____
**JANE J. BOYLE
UNITED STATES DISTRICT JUDGE**